GREENBERG TRAURIG LLP
Philip H. Cohen (PC-5171)
MetLife Building
200 Park Avenue
New York, New York 10166
Tel:  (212) 801-9200
Fax: (212) 801-6400


GREENBERG TRAURIG, PA
C. Ryan Reetz (CR-2572)
1221 Brickell Avenue
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

*Attorneys for Plaintiff*
*GLOBAL WASTE SYSTEMS, INC.*


## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
GLOBAL WASTE SYSTEMS, INC.,     :
     :  CIVIL ACTION NO.
             Plaintiff,    :  05 CV 8167 (GEL) (DF)
     :  ECF CASE
         v.            :
     :  **COMPLAINT**
AMERICAN PETROLEUM GROUP, INC.;  :  **AND JURY DEMAND**
JAMES W. ZIMBLER; RONALD SHAPSS;  :
WILLIAM PALLA; CRUMB RUBBER  :
INVESTORS CO., LLC.; and  :
ANGELO, GORDON &CO., L.P.,  :
     :
          Defendants.    :
------------------------------------------------------- x


GLOBAL WASTE SYSTEMS, INC., as and for its Complaint against

AMERICAN PETROLEUM GROUP, INC., JAMES W. ZIMBLER, RONALD

SHAPSS, WILLIAM PALLA, CRUMB RUBBER INVESTORS, CO., LLC, and ANGELO, GORDON & CO., L.P., alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Global Waste Systems, Inc. ("Global Waste") is a Florida corporation with its principal place of business in Florida.

2.     Defendant American Petroleum Group, Inc. ("APG") is a Nevada corporation with its principal place of business in Illinois. APG is a holding company whose business includes acquiring, merging, and managing various business opportunities, including the manufacturing and distribution of petroleum and related products, and the recycling of "uncombusted" oils. The Court has jurisdiction over APG because this action arises out of, *inter alia,* APG's transacting business within the State of New York and APG's commission of tortious acts within the State of New York.

3.     Defendant James W. Zimbler is a natural person who resides, on information and belief, in the State of Pennsylvania. From at least August 2004 until August 2005, Mr. Zimbler was the President and a Director of defendant APG. The Court has jurisdiction over Mr. Zimbler because this action arises out of, *inter alia,* Mr. Zimbler's commission of tortious acts within the State of New York.

4.     Defendant Ronald Shapss is a natural person who resides and works in the State of New York.  At all relevant times, Mr. Shapss has been the Chairman of defendant APG.

5.     Defendant William Palla is a natural person who resides in the Commonwealth of Pennsylvania.  At all relevant times, Mr. Palla was an agent of defendant APG in connection with the matters described below.  The Court has

2

jurisdiction over Mr. Palla because this action arises out of, *inter alia,* Mr. Palla's commission of tortious acts within the State of New York.

6.     Defendant Crumb Rubber Investors Co., L.L.C. ("Crumb Rubber') is a Delaware limited liability company with its principal place of business in New York. On information and belief, Crumb Rubber is primarily or exclusively owned by, and is dominated and controlled by, defendant Angelo, Gordon & Co., L.P., which purported at all relevant times (with the knowledge and consent of Crumb Rubber) to have full authority to act for, and full control over, Crumb Rubber.

7.     Defendant Angelo, Gordon & Co., L.P. ("Angelo Gordon") is a Delaware limited partnership with its principal place of business in New York. Angelo Gordon is an investment management firm specializing in "non-traditional assets."

8.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.     Venue is proper within this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this action occurred within this District and one or more of the defendants are located within this District

10.     All conditions precedent to the maintenance of this action have occurred, been performed, or are otherwise excused.

## GENERAL ALLEGATIONS

### A.     The Recovery Technologies Investment

11.     Beginning in mid-2004, Global Waste began negotiating to purchase from Crumb Rubber and its wholly-owned subsidiaries certain assets (the "Recovery

Technologies Assets"), including (without limitation) assets relating to scrap tire collection and processing businesses located in Atlanta, Georgia, Baytown, Texas, and Central Florida.

12.     The seller's primary negotiator (who acted on behalf of both Crumb Rubber and Angelo Gordon) was Josh Brain, the co-manager of Angelo Gordon's private equity and special situation investment efforts.  Initially, investigation and negotiations on behalf of Global Waste were conducted by its then-President, Ronald Boger, and its then-Chief Financial Officer, Bill Short.  In late 2004 Messrs. Boger and Short left Global Waste.  Global Waste subsequently negotiated through its President, Gary Brestle, and its Vice President, Mauricio Quijada.

13.     On or about October 12, 2004, Global Waste and Crumb Rubber entered into a letter of intent with respect to the Recovery Technologies Assets.  The purchase price provided in the letter of intent was $9,000,000, subject to certain adjustments identified in the letter.  The letter of intent provided that it would terminate on November 30, 2004.  It also provided that only certain of its provisions would be legally binding and enforceable with respect to the parties, including a "standstill" obligation that precluded Crumb Rubber from attempting to negotiate with any other potential purchasers.

**B.    The Binding Preliminary Commitment
       And Representations of Continued Exclusive Negotiation**

14.     Crumb Rubber was unable to provide Global Waste with necessary due diligence information, including current financial information, by the letter of intent's termination date.  However, both parties remained interested in consummating the transaction.

15.     Accordingly, beginning on or about December 7, 2004, in a meeting between Josh Brain and Mauricio Quijada in New York City, the parties agreed that they would continue to pursue the transaction notwithstanding the letter of intent's expiration; that they would follow the business terms previously agreed upon by the by parties and memorialized in the letter of intent, such as the price and particular assets to be acquired; that they would negotiate the remaining terms in good faith; and that the sellers would continue to deal exclusively with Global Waste in seeking to sell the Recovery Technologies Assets.

16.     In multiple meetings and telephone calls with Gary Brestle between December 7, 2004 and April 15, 2005, Josh Brain (on behalf of both Angelo Gordon and Crumb Rubber) repeated the seller's commitments described in the preceding paragraph, and stated that (1) Global Waste "had the deal" and Brain and his companies would negotiate in good faith to a conclusion of the transaction; (2) Brain and his companies were dealing and would deal exclusively with Global Waste in connection with a potential sale of the Recovery Technology Assets; and (3) Global Waste did not need a written letter of intent to protect its rights, but could absolutely rely upon Mr. Brain's statements.

17.     During the same time period, Mr. Brain told Mr. Brestle, in numerous telephone conversations, that Mr. Brain would be happy to confirm to any party, at Mr. Brestle's request, that a deal was in place for Global Waste to purchase the Recovery Technology Assets.

18.    In reliance upon the foregoing agreement and representations, Global Waste expended substantial sums for, *inter alia*, due diligence, accounting, legal, and financing work in connection with the transaction.

19.    In further reliance upon the foregoing agreement and representations, Global Waste entered into negotiations and, ultimately, an agreement to purchase additional assets from Envirotire in Canada (under which Global Waste made a non-refundable deposit of approximately $100,000 and incurred significant expenses), and agreed to hire John Wypich, a corporate executive who was to run the combined operations after the Recovery Technologies purchase was completed.

C.    **Global Waste Involves APG**

20.    As part of its work to raise the necessary funds in order to complete the transaction, on or about April 4, 2005, Global Waste was introduced to APG at the Plaza Hotel in New York City. Global Waste sought to determine whether APG would be interested in participating in the transaction. APG expressed interest in the transaction.

21.    On or about April 4, 2005, Global Waste and APG, Shapss, Palla, and Zimbler entered into an agreement with respect to the transaction. In consideration of Global Waste's introducing APG to the Recovery Technologies transaction, to Crumb Rubber and Angelo Gordon, and to the corporate executive from Canada that Global Waste had hired to run the combined operations, APG, Shapss, Palla, and Zimbler agreed to work exclusively through Global Waste in connection with the transaction; to treat information relating to the transaction as confidential; to respect Global Waste's agreement with Crumb Rubber and its interest in consummating the transaction; and to sign any necessary confidentiality agreements. APG, Shapss, Palla, and Zimbler repeated

6

these representations to Global Waste on numerous occasions, including April 11, 2005 in Philadelphia and April 19, 2005 at the Plaza Hotel in New York City.

22.     In reliance on the promises and representations of APG, Schapps, Palla, and Zimbler, Global Waste introduced APG to the Recovery Technologies transaction; worked with APG to structure APG's economic participation; introduced APG to Josh Brain, Crumb Rubber, and Angelo Gordon; and introduced APG to John Wypich, the executive who Global Waste had agreed to hire to run the combined operations.

23.     In further reliance on the promises and representations of APG, Schapps, Palla, and Zimbler, Global Waste permitted and encouraged APG to work directly with Josh Brain, Crumb Rubber, and Angelo Gordon in order to assist in consummating the transaction. Furthermore, Global Waste expended substantial sums on incorporating APG into the transaction.

### D.     APG, Crumb Rubber, and Angelo Gordon Secretly Negotiate to Exclude Global Waste From The Transaction

24.     At some point prior to April 22, 2005, unbeknownst to Global Waste, APG, Shapss, Palla, and Zimbler began secretly negotiating with Brain, Crumb Rubber, and Angelo Gordon in New York in an effort to exclude Global Waste from the transaction and acquire the Recovery Technologies Assets directly for APG.

25.     By April 22, 2005, APG, Shapss, Palla, and Zimbler had persuaded Brain, Crumb Rubber, and Angelo Gordon to stop dealing with Global Waste on the transaction and to negotiate a sale of the Recovery Technologies Assets directly to APG to cut Global Waste out of the transaction.

26.     On or about April 22, 2005, Brain, acting on behalf of Crumb Rubber and Angelo Gordon, notified Global Waste that it was terminating negotiations. Brain

claimed that Crumb Rubber's economic position had improved and that Angelo Gordon no longer wanted to sell its assets. In truth, Angelo Gordon and Crumb Rubber still wanted to sell the assets – but to a different buyer: APG.

27.     Thereafter, Crumb Rubber and Angelo Gordon refused to negotiate further with Global Waste. As a result, Global Waste has been deprived of the opportunity to acquire the Recovery Technology Assets under the business terms provided in the parties' binding preliminary commitment, and Global Waste has lost substantial sums of money expended in reasonable reliance upon the false promises and representations of all defendants.

28.     During the same time period and thereafter, APG, Shapss, Palla, and Zimbler continued to secretly negotiate with Brain, Crumb Rubber, and Angelo Gordon for a sale of the Recovery Technologies Assets directly to APG.

29.     On information and belief, APG, Crumb Rubber, and Angelo Gordon have reached a tentative or final agreement to sell Crumb Rubber's assets to APG, with financing for the transaction intended to be provided by Sanders Morris Harris Group, Inc. of Houston, Texas.

30.     The actions of APG, Shapss, Palla, and Zimbler in secretly seeking to exclude Global Waste from the transaction and instead to obtain the assets for APG's own benefit were wanton, willful, malicious, and morally culpable.

### FIRST CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE
### (Against APG, Shapss, Palla, and Zimbler)

31.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

8

32.     Global Waste entered into a binding preliminary commitment with Crumb Rubber, and had a reasonable expectation of economic advantage from the Recovery Technologies transaction with Crumb Rubber.

33.     APG, Shapss, Palla, and Zimbler were aware of both the binding preliminary commitment and Global Waste's reasonable expectation of economic advantage from the Recovery Technologies transaction with Crumb Rubber.

34.     APG, Shapss, Palla, and Zimbler intentionally, and without justification, procured the breach of the binding preliminary commitment, and intentionally interfered with the Recovery Technologies transaction with Crumb Rubber, preventing Global Waste from realizing performance of the binding preliminary commitment or the economic advantage from the transaction.

35.     As a result of the conduct of APG, Shapss, Palla, and Zimbler, Global Waste has suffered damages, including (without limitation) the profits Global Waste would have made in connection with the transaction.

### SECOND CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (Against APG, Shapss, Palla, and Zimbler)

36.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

37.     As described above, in consideration of the disclosure of the details of the Recovery Technologies transaction, Global Waste entered into a contract with APG, Shapss, Palla, and Zimbler pursuant to which, *inter alia,* APG, Shapss, Palla, and Zimbler agreed to work exclusively through Global Waste in connection with the transaction; to treat information relating to the transaction as confidential; to sign any necessary

confidentiality agreements; to respect Global Waste's agreement with Crumb Rubber; and to respect Global Waste's interest in consummating the transaction.

38.     APG, Shapss, Palla, and Zimbler breached the contract by, *inter alia,* circumventing Global Waste's role in the transaction; negotiating directly with Brain, Crumb Rubber, and Angelo Gordon; using information relating to the transaction for their own, personal benefit; agreeing and subsequently failing to sign a confidentiality agreement and to abide by its provisions; persuading Brain, Crumb Rubber, and Angelo Gordon to terminate discussions with Global Waste; and seeking to acquire the Recovery Technologies Assets directly for the benefit of APG.

39.     As a result of the foregoing, Global Waste has suffered damages, including (without limitation) the profits Global Waste would have made in connection with the transaction.

**THIRD CLAIM FOR RELIEF**
**FRAUD**
**(Against APG, Shapss, Palla, and Zimbler)**

40.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

41.     As described above in paragraph 21, APG, Shapss, Palla, and Zimbler made representations of material fact to Global Waste.

42.     APG, Shapss, Palla, and Zimbler intended for Global Waste to rely on the representations, and Global Waste did, in fact, reasonably rely upon them, as detailed in paragraphs 22 and 23.

43.     The representations were false when made, and known by APG, Shapss, Palla, and Zimbler to be false when made, in that APG, Shapss, Palla, and Zimbler had no present intention of complying with them.

44.     As a result of Global Waste's reliance on the misrepresentations, Global Waste has suffered damages, including (without limitation) the profits Global Waste would have made in connection with the transaction.

## FOURTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION
### (Against APG, Shapss, Palla, and Zimbler)

45.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

46.     Based on the foregoing, when Global Waste introduced APG, Shapss, Palla, and Zimbler to the Recovery Technologies transaction and shared the information relating to the transaction based on the representations of APG, Shapss, Palla, and Zimbler, the latter four parties were placed in a position of special trust and confidence with Global Waste, and those four parties and Global Waste formed a special relationship such that in morals and good conscience Global Waste had the right to rely upon APG, Shapss, Palla, and Zimbler for information in connection with the transaction.

47.     As described above in paragraph 21, APG, Shapss, Palla, and Zimbler made representations of material fact to Global Waste.

48.     APG, Shapss, Palla, and Zimbler knew that their representations were desired by Global Waste for a serious purpose; knew that Global Waste intended to rely upon the representations; intended for Global Waste to rely on the representations; and

knew that if their representations were false or erroneous Global Waste would be injured by its reliance upon them.

49.     Global Waste did, in fact, reasonably rely upon the representations of APG, Shapss, Palla, and Zimbler.

50.     The representations were false when made, and APG, Shapss, Palla, and Zimbler knew, or should have known, the representations to be false when made, in that APG, Shapss, Palla, and Zimbler had no present intention of complying with them.

51.     As a result of Global Waste's reliance on the misrepresentations, Global Waste has suffered damages, including (without limitation) the profits Global Waste would have made in connection with the transaction.

**FIFTH CLAIM FOR RELIEF**
**PROMISSORY ESTOPPEL**
**(Against APG, Shapss, Palla, and Zimbler)**

52.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

53.     As described above, APG, Shapss, Palla, and Zimbler made clear and unambiguous promises to Global Waste that they would work exclusively through Global Waste in connection with the transaction; would treat information relating to the transaction as confidential; would sign any necessary confidentiality agreements; would respect Global Waste's agreement with Crumb Rubber and its interest in consummating the transaction.

54.     Global Waste reasonably and foreseeably relied upon the promises made by APG, Shapss, Palla, and Zimbler.

55. As the result of Global Waste's reasonable and foreseeable reliance, Global Waste has suffered damages, including (without limitation) the profits Global Waste would have made in connection with the transaction.

## SIXTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (Against APG)

56. Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

57. As a result of the foregoing, APG has been enriched, at the expense of Global Waste, under circumstances such that in equity and good conscience APG should be required to compensate Global Waste for the benefits received.

## SEVENTH CLAIM FOR RELIEF
## BREACH OF BINDING PRELIMINARY COMMITMENT
### (Against Crumb Rubber and Angelo Gordon)

58. Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

59. On or about December 7, 2004, Global Waste, Crumb Rubber, and Angelo Gordon entered into a binding preliminary commitment agreement. As part of that agreement, the parties agreed that they would continue to pursue the Recovery Technologies transaction notwithstanding the letter of intent's expiration; that they would follow the business terms previously agreed upon by the by parties and memorialized in the letter of intent, such as the price and particular assets to be acquired; that they would negotiate the remaining terms in good faith; and that the sellers would continue to deal exclusively with Global Waste in seeking to sell the Recovery Technologies Assets..

60.    Crumb Rubber and Angelo Gordon breached the binding preliminary commitment agreement by failing and refusing to negotiate in good faith; by unilaterally terminating negotiation of the agreement based on false pretenses; and by secretly negotiating with APG, Shapss, Palla, and Zimbler to instead sell the Recovery Technologies assets to APG.

61.    As a result of Crumb Rubber's and Angelo Gordon's breaches of the binding preliminary commitment agreement, Global Waste has suffered damages, including (without limitation) the profits Global Waste would have made in connection with the transaction.

### EIGHTH CLAIM FOR RELIEF
### PROMISSORY ESTOPPEL
### (Against Crumb Rubber and Angelo Gordon)

62.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

63.    As described above, Crumb Rubber and Angelo Gordon made clear and unambiguous promises to Global Waste that they would continue to pursue the Recovery Technologies transaction notwithstanding the letter of intent's expiration; would follow the business terms identified in the letter of intent and would negotiate the remaining terms in good faith; and that would continue to deal exclusively with Global Waste in seeking to sell the Recovery Technologies Assets.

64.    Global Waste reasonably and foreseeably relied upon the promises made by Crumb Rubber and Angelo Gordon.

65.    As the result of Global Waste's reasonable and foreseeable reliance, Global Waste has suffered damages.

## NINTH CLAIM FOR RELIEF
### FRAUD
**(Against Crumb Rubber and Angelo Gordon)**

66.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above.

67.     As described above in paragraphs 15-17, between December 7, 2004 and April 22, 2005, Crumb Rubber and Angelo Gordon (through Brain) repeatedly made representations of material fact to Global Waste.

68.     Crumb Rubber and Angelo Gordon intended for Global Waste to rely on the representations, and Global Waste did, in fact, reasonably rely upon them.

69.     At least some of those representations were false when made, and known by Crumb Rubber and Angelo Gordon to be false when made, in that Crumb Rubber and Angelo Gordon were not then genuinely continuing to pursue the Recovery Technologies transaction with Global Waste; were not then negotiating the remaining terms of the transaction in good faith; were not then dealing exclusively with Global Waste in seeking to sell the Recovery Technologies Assets; and were secretly negotiating with APG, Shapss, Palla, and Zimbler to sell the assets directly to APG.

70.     As a result of Global Waste's reliance on the misrepresentations, Global Waste has suffered damages.

WHEREFORE, Plaintiff Global Waste demands judgment for damages against defendants, together with interest, costs, an award of punitive damages against APG, Shapss, Palla, and Zimbler, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: New York, New York
September 21, 2005

GREENBERG TRAURIG LLP

By:_____
Philip H. Cohen (PC-5171)

MetLife Building
200 Park Avenue
New York, New York 10166
Tel. (212) 801-9200
Fax. (212) 801-6400

GREENBERG TRAURIG, PA
C. Ryan Reetz (CR-2572)
1221 Brickell Avenue
Miami, FL 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

*Attorneys for Plaintiff*
*GLOBAL WASTE SYSTEMS, INC.*